**WIRTZ LAW APC**
Richard M. Wirtz (SBN 137812)
rwirtz@wirtzlaw.com
Amy R. Smith (SBN 286128)
asmith@wirtzlaw.com
4370 La Jolla Village Drive, Suite 800
San Diego, California 92122
Telephone: 858.259.5009

**KNIGHT LAW GROUP LLP**
Steve Mikhov (SBN 224676)
1801 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 552-2250

Attorneys for Plaintiff,
LORENA GODINEZ

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENA GODINEZ,<br><br>        Plaintiff,<br>    v.<br><br>BMW OF NORTH AMERICA, LLC,<br>a Delaware Limited Liability Company;<br>and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.: 2:17-CV-05072-ODW-RAO<br><br>**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |

Plaintiff LORENA GODINEZ ("Plaintiff") submits her Memorandum of Contentions of Fact and Law in accordance with Local Rule 16-4.

## I.   SUMMARY OF PLAINTIFF'S CLAIMS

**A.**   **CLAIM 1:**  Defendant BMW of North America, LLC ("BMW NA") breached the express warranties that accompanied the sale of the 2010 328i ("vehicle") to Plaintiff, thereby violating the Song-Beverly Consumer Warranty Act ("the Act"), California Civil Code § 1790 et seq.;

**B.**   **CLAIM 2:** BMW NA breached the implied warranties that accompanied the sale of the vehicle to Plaintiff, thereby violating the Act, California Civil Code § 1790 et seq.;

**C.**   **CLAIM 3:**  BMW NA violated the Act, Civil Code section 1793.2(b) by failing to repair the vehicle to conform to warranty within 30 days.

## II.   THE ELEMENTS OF PLAINTIFF'S CLAIMS

Claim 1:     BMW NA breached the express warranties that accompanied the sale of vehicle to Plaintiff, thereby violating the Act, California Civil Code § 1790 et seq.

Plaintiff claims that BMW NA breached the express warranties that accompanied the sale of the vehicle and the Act because the vehicle had defect(s) covered by the warranties that substantially impaired the use, value, or safety of the vehicle, and BMW NA failed to promptly repurchase or replace the vehicle after a reasonable number of repair opportunities. To establish this claim, Plaintiff must prove the following:

(1) That Plaintiff bought a new motor vehicle distributed by BMW NA;

(2) That BMW NA gave Plaintiff a written warranty;

(3) That the vehicle had one or more defects covered by the warranty that substantially impaired its use, value, or safety to a reasonable person in Plaintiff's situation;

- 1 -

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

(4) That Plaintiff delivered the vehicle to BMW NA's authorized repair facilities for repair of the defect(s);

(5) That BMW NA or its authorized repair facility failed to repair the vehicle to match the written warranty after a reasonable number of opportunities to do so; and

(6) That BMW NA did not promptly replace or buy back the vehicle.

Judicial Council of California Civil Jury Instructions No. 3201 (Sept. 2018).

Additionally, Plaintiff claim that BMW NA is liable for civil penalty damages because it willfully violated the Act by failing to promptly offer to repurchase or replace the vehicle. (Judicial Council of California Civil Jury Instructions No. 3244 (Sept. 2018).) "Willful" means that BMW NA knew of its legal obligations and intentionally declined to follow them. (Id.)

Each time the vehicle was given to BMW NA or its authorized repair facility (dealership) for repair counts as an opportunity to repair, even if BMW NA or its representative did not do any repair work. (Judicial Council of California Civil Jury Instructions No. 3202 (Sept. 2018); *see Silvio v. Ford Motor Co*. 109 Cal.App.4th 1205, 1208 (2003).)

California Civil Code section 1793.2, subd. (d) provides, in part:

(1) Except as provided in paragraph (2), if the manufacturer or its representative in this state does not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or reimburse the buyer. . ..

(2) If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer.

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

"[T]he only affirmative step the Act imposes on consumers is to 'permit[] the manufacturer a reasonable *opportunity* to repair the vehicle.' Whether or not the manufacturer's agents choose to take advantage of the opportunity or are unable despite that opportunity to isolate and make an effort to repair the problem, are matters for which the consumer is not responsible." (*Oregel v. American Isuzu Motors, Inc.* 90 Cal.App.4th 1094, 1103-1104 (2001), internal citation omitted.) "Section 1793.2(d) requires the manufacturer to afford the specified remedies of restitution or replacement if that manufacturer is unable to repair the vehicle 'after a reasonable number of attempts.' 'Attempts' is plural. The statute does not require the manufacturer to make restitution or replace a vehicle if it has had only one opportunity to repair that vehicle." (*Silvio v. Ford Motor Co.* 109 Cal.App.4th 1205, 1208 (2003).) "Whether the impairment is substantial is determined by an objective test, based on what a reasonable person would understand to be a defect. This test is applied, however, within the specific circumstances of the buyer." (*Lundy v. Ford Motor Co.* 87 Cal.App.4th 472, 478 (2001), internal citations omitted.) "The issue of whether the problems constituted substantial impairment is one for the trier of fact." (*Schreidel v. American Honda Motor Co.* 34 Cal.App.4th 1242, 1250 (1995), internal citations omitted.)

Claim 2:    BMW NA breached the implied warranties that accompanied the sale of the vehicle to Plaintiff, thereby violating the Act, Civil Code § 1790 *et seq.*

Plaintiff claims that BMW NA breached the implied warranties that accompanied the sale of the vehicle when it sold the vehicle with a defect, thereby violating the Act. To establish this claim, Plaintiff must prove the following:

(1)    That Plaintiff bought a new motor vehicle distributed by BMW NA;

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

(2)   That at the time of purchase BMW NA was in the business of distributing and selling vehicles; and

(3)   That the vehicle was (i) not of the same quality as those generally acceptable in the trade; or (ii) not fit for the ordinary purpose for which such goods are used.

Judicial Council of California Civil Jury Instructions No. 3210 (Sept. 2018).

Every sale of consumer goods sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable. (Civ. Code, § 1792.) The implied warranty of merchantability applies to the condition of the vehicle at the time of sale, but latent defects can be discovered beyond the one-year duration of that warranty. (*Mexia v. Rinker Boat Co., Inc.* (App. 4 Dist. 2009) 174 Cal.App.4th 1297.) The notification requirements under the Uniform Commercial Code section 2601 and 2602 do not apply to cases brought under the Act. (*Krotin v. Porsche Cars North America, Inc.* 38 Cal.App.4th 294, 300-02 (1995).)

Civil Code section 1794, subd. (a) provides: "Any buyer of consumer goods who is damaged by a failure to comply with any obligation... under an implied... warranty…may bring an action for the recovery of damages and other legal and equitable relief." The measure of the buyer's damages in an action under this section [1794] shall include the rights of replacement or reimbursement as set forth in Section 1793.2, subd. (d) and where the buyer has rightfully rejected or justifiably revoked acceptance of the goods or has exercised any right to cancel the sale, Sections 2711 – 2713 of the Commercial Code shall apply. (Civ. Code, §§ 1794, subds. (b) and (b)(1).)

There is no requirement that to recover on a claim for breach of the implied warranty of merchantability under the Act, the consumer must bring the vehicle to the manufacturer's authorized repair facility for repair of the defect. (CACI No. 3210; *Brand v. Hyundai Motor America* 226 Cal.App.4th 1538, 1545 (2014); *Mocek*

- 4 -

*v. Alfa Leisure, Inc.* 114 Cal.App.4th 402, 406-08 (2003).)

       <u>Claim 3</u>:     BMW NA violated the Act, Civil Code section 1793.2(b) by failing to repair the vehicle to conform to warranty within 30 days.

To establish this claim, Plaintiff must prove the following:

(1)     That Plaintiff bought a new motor vehicle distributed by BMW NA;

(2)     That BMW NA gave Plaintiff a written warranty;

(3)     That the new motor vehicle had defect(s) that were covered by the warranty;

(4)     That BMW NA or its authorized repair facility failed to complete repairs within 30 days so as to confirm to the applicable warranties.

See Judicial Council of California Civil Jury Instructions § 3205 (Sept. 2018).

       Plaintiff pleads that she was a buyer injured by "Civil Code section 1793.2, subdivision (b) which in pertinent part requires that with respect to consumer goods sold in this state for which the manufacturer has made an express warranty and service and repair facilities are maintained in this state (undisputed herein) and 'repair of the goods is necessary because they do not conform with the applicable express warranties, service and repair shall be commenced within a reasonable time by the manufacturer or its representative.'" (*Gomez v. Volkswagen of Am.* (1985) 169 Cal.App.3d 921, 925 (1985), footnote omitted.)

///
///
///
///
///
///

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

III.   **BRIEF DESCRIPTION OF KEY EVIDENCE IN SUPPORT OF PLAINTIFF'S CLAIMS**

A.   **CLAIM 1: BMW NA breached the express warranties that accompanied the sale of vehicle to Plaintiff, thereby violating the Act, California Civil Code § 1790 et seq.**

Plaintiff will introduce the retail installment sales contract, which establishes that Plaintiff purchased the vehicle that was distributed by BMW NA and also established that the vehicle was sold with coverage of all warranties, making the vehicle a "new motor vehicle" within the meaning of the statute. Plaintiff will introduce the Owner's Manual and Warranty Booklet which also establishes that BMW NA gave written warranties to Plaintiff when she purchased the vehicle.

Plaintiff will introduce repair orders and related documentation created by BMW NA's authorized repair facilities and will provide testimony from Plaintiff, her expert, and BMW NA's authorized dealership personnel related to repairs and repair opportunities given for Plaintiff's vehicle to establish a reasonable number of repair attempts made by BMW NA's authorized repair facilities.

Plaintiff will introduce evidence, will testify herself, and will call her qualified expert to testify that the vehicle had defect(s) covered by express warranties that substantially impaired its use, value or safety to a reasonable person in Plaintiff's situation.

Plaintiff will also introduce evidence of recalls and service information bulletins ("SIB") that show BMW NA's knowledge of defects in the vehicle.

Plaintiff will introduce evidence and qualified expert testimony that BMW NA and its authorized repair facilities failed to repair the vehicle to match the written warranty after a reasonable number of opportunities to do so. This testimony will focus on the fact that various defects for which Plaintiff presented the vehicle for repair continued to manifest and affect her usage, safety, and the value of the vehicle after the repair visits.

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Plaintiff will introduce evidence that the BMW NA failed to replace or buy back the vehicle, including evidence and testimony of Plaintiff's contacts with BMW NA and testimony proving that BMW NA did not comply with the Act and promptly offer to repurchase or replace the vehicle when it qualified for such relief.

In support of her claim for civil penalties under the Act, Plaintiff will introduce evidence that BMW NA knew of Plaintiff's presentations of the vehicle for repairs, and yet still did not comply with its obligation to promptly repurchase the vehicle when it qualified. Plaintiff will introduce evidence and provide testimony from BMW NA's Person Most Knowledgeable about the history of Plaintiff's contacts with BMW NA, and how BMW NA never offered to repurchase or replace the vehicle, even when Plaintiff contacted BMW NA directly and requested such relief. Plaintiff will also prove that BMW NA has established toothless protocols with its dealerships with regards to repurchasing or replacing vehicles that qualify under the Act. This evidence will show that BMW NA knew of its legal obligations and intentionally failed to meet them.

**B.    CLAIM 2:  Defendant BMW NA breached the implied warranties that accompanied the sale of the vehicle to Plaintiff, thereby violating the Act, Civil Code § 1790 et seq.**

Plaintiff will introduce the retail installment sales contract, which establishes that Plaintiff purchased the vehicle that was distributed by BMW NA.

Plaintiff will introduce evidence and testimony proving that at the time she purchased the vehicle, BMW NA was in the business of distributing and selling the vehicle through its authorized dealerships.

Plaintiff will introduce evidence and testimony that the vehicle was not of the same quality as those generally acceptable in the trade and was not fit for the ordinary purposes for which such goods are used. Plaintiff will introduce the repair orders, Plaintiff's testimony regarding their issues of problems with the vehicle, testimony from dealership personnel regarding the issues, repairs, and

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

documentation of work done, and expert testimony regarding the defects and repairs performed attempting to address those defects.

**C.      CLAIM 3: BMW NA violated the Act at Civil Code section 1793.2(b) by failing to repair the vehicle to conform to warranty within 30 days.**

Plaintiff will present evidence that she purchased the vehicle and it was accompanied by written warranties as discussed above (admitting the sales contract and warranty booklet). Plaintiff will present the repair orders, which show the dates in and out when the dealership had possession of the vehicle to repair to show the total dates out of service for Plaintiff's vehicle, which equal more than 30 days. Plaintiff will testify, as will her expert, that the repairs effectuated at BMW NA's authorized repair facilities were not successful in fixing the defect, and Plaintiff continued to suffer from the same defect.

**IV.   SUMMARY OF BMW NA'S AFFIRMATIVE DEFENSES**

Plaintiff does not know which affirmative defenses BMW NA plans to pursue at trial, but based on prior litigation experience, Plaintiff expects the following to be raised:

   a)  Second Affirmative Defense – Duration of Implied Warranty.

   b)  Third Affirmative Defense – Subject Vehicle Fit for its Intended Purpose.

   c)  Fifth Affirmative Defense – Unreasonable or Unauthorized Use

   d)  Sixth Affirmative Defense – Misuse, Abuse, Improper Maintenance

**V.   BRIEF DESCRIPTION OF KEY EVIDENCE RELIED UPON IN OPPOSITION TO EACH AFFIRMATIVE DEFENSE**

**A.      Second Affirmative Defense**

**1.      Duration of Implied Warranty**

Plaintiff expects BMW NA will argue that the limits of the implied warranty claim is one year from purchase, and that the duration of the implied warranty bars an action when the purchaser fails to discover and report the defect to the seller

within the first year of ownership. California precedent disagrees.

Unless it is specifically disclaimed, every sale of a new motor vehicle in California includes an implied warranty by the manufacturer, distributer, or seller that the goods are merchantable under the Act. (Cal. Civ. Code, §§ 1791.3, 1792.) The duration of an implied warranty of merchantability is one year after the sale, unless a shorter period is stated in a writing that accompanies the consumer. (Cal. Civ. Code, § 1791.1, subd. (c); CACI No. 3212.)

A latent defect, undiscovered within the first year of ownership, can lead to a successful claim for breach of the implied warranty of merchantability.

In *Mexia v. Rinker Boat Co., Inc.,* 174 Cal.App.4th 1297 (2009), the Court of Appeal held that:

> "…[T]he plain language of the statute, particularly in light of the consumer protection policies supporting the Song-Beverly Act, make clear that the statute merely creates a limited, prospective duration for the implied warranty of merchantability; **it does not create a deadline for discovering latent defects or for giving notice to the seller.**"

(*Id.* at 1301, emphasis added.)

The court acknowledged a "policy repeatedly expressed by the California courts of the need to construe the Song-Beverly Act so as to implement the legislative intent to expand consumer protection and remedies." (*Id.* at 1311.) The court also held that the implied warranty is breached at the time of sale where the defect is latent and the purchaser is not obligated to either discover or report the breach within the one-year durational provision. (*Id.* at 1310-1311.)

In *Daniel v. Ford Motor* Company, 806 F.3d 1217, the U.S. Court of Appeals for the Ninth Circuit affirmed the *Mexia* decision, and held that the district court erred when it declined to follow *Mexia*. (*Daniel, supra,* 806 F.3d at 1223.)

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Accordingly, BMW NA should be precluded from arguing that the one-year duration of the implied warranty is anything other than what the *Mexia* court ruled it to be. The one-year is not a limitation on when any latent defect need be discovered or a limit on when the Plaintiff could have or should reported the defect to BMW NA or its authorized repair facilities.

**B.    Third Affirmative Defense**

Plaintiff anticipates that BMW NA will argue that it did not breach the implied warranty of merchantability because Plaintiff could always drive the vehicle. This is not the standard for breaching the implied warranty, and the Court should preclude BMW NA from making this argument to the jury.

In *Brand v. Hyundai Motor America*, 226 Cal.App.4th 1538 (2014), the court was faced with this same defense and clearly rebuked it:

> "[Defendant] suggests 'the implied warranty of merchantability can be breached only if the vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation.' **As the trial court correctly recognized, however, a merchantable vehicle under the statute requires more than the mere capability of 'just getting from point "A" to point "B."'"**

(*Brand, supra,* 226 Cal.App.4th at 1546, emphasis added.)

Accordingly, BMW NA should be precluded from arguing that simply because Plaintiff was able to drive the vehicle (or get from point "A" to point "B"), the breach of implied warranty claim fails.

**C.    Fifth Affirmative Defense**

This is a recognized affirmative defense for a Song-Beverly Act case. CACI No. 3220 describes the elements, but really all that is required is that there was "unauthorized or unreasonable use of the vehicle after it was sold."

The Act itself is vague about what constitutes "unauthorized or unreasonable use of the vehicle." However, what is clear is that Plaintiff does not have the burden to disprove that any defects were <u>not</u> caused by unreasonable use in order to recover under the Act; rather the defendant has the burden to prove this affirmative defense. (*Jones v. Credit Auto Center, Inc.*, 237 Cal.App.4th Supp. 1 (2015).)

First, there is no evidence that Plaintiff used the vehicle in any unreasonable or unauthorized way. In support of Plaintiff's position that the defects were not caused by unreasonable or unauthorized use, Plaintiff will testify (as she did in her deposition) that she did not have a trailer hitch on the car (56:18-19), she never drove the vehicle more than 100 miles from her home (56:20-57:4), she never opened the hood of her vehicle (15:9-12), she did not let her parents or brother work on the vehicle (15:13-15), and she only used the vehicle for personal and family purposes and to commute to work (30:18-31:1). Further, there is no evidence in the repair orders that any defect for which Plaintiff brought in her vehicle was caused by unreasonable or unauthorized use. According to BMW NA's own documentation, BMW NA's authorized repair facilities made ten repairs to Plaintiff's vehicle under the warranty, and no repairs for "goodwill" or "customer pay," which would be the classification if a defect was caused by Plaintiff's actions.

Accordingly, there is no evidence to support this affirmative defense and BMW NA should be required to make an offer of proof before arguing this affirmative defense to the jury.

### D.    Sixth Affirmative Defense

This is not a recognized affirmative defense for a Song-Beverly Act case. CACI No. 3220, as described above, is the closest jury instruction on point.

Similar to BMW NA's Fifth Affirmative Defense, there is no evidence to support this affirmative defense. There is no evidence that any defect presented on any repair visit Plaintiff made to a BMW NA authorized repair facility was caused by misuse, abuse, or a lack of maintenance. BMW NA's technicians are trained to

look for such failure to maintain, to ensure BMW NA's warranty is only used to pay for qualifying defects. If any defect had been tied to lack of maintenance, abuse, or misuse, either Plaintiff would have had to pay for the repair or the dealership would have covered it as "goodwill." As discussed above, BMW NA's documents show no repair was ever paid by the customer (other than maintenance) and no repair was ever paid by the dealership as "goodwill."

Accordingly, there is no evidence to support this affirmative defense and BMW NA should be required to make an offer of proof before arguing this affirmative defense to the jury.

## VII.   ANTICIPATED EVIDENTIARY ISSUES

Plaintiff anticipates two evidentiary issues will arise during trial: (1) BMW NA's Affirmative Duty and (2) Incidental and Consequential Damages.

### A.   BMW NA's Affirmative Duty.

Plaintiff anticipates the parties will disagree on BMW NA's burden to promptly offer to repurchase or replace Plaintiff's vehicle. Plaintiff will suggest a special jury instruction regarding what California caselaw has deemed to be BMW NA's affirmative duty to reach out to Plaintiff and offer to repurchase or replace her vehicle, and BMW NA will likely object.

The Act states:

> "If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer. . .."

(Civ. Code, § 1793.2, subd. (d)(2).) The statute <u>does not require</u> that a consumer request the manufacturer replace the vehicle in order to trigger the manufacturer's duty. Rather, the manufacturer's duty is affirmative. In *Krotin v. Porsche Cars North*

*America, Inc.* 38 Cal.App.4th 294 (1995), the court considered whether a consumer must revoke acceptance of a car within a reasonable time. One of the arguments raised to the court went as follows:

> . . . [T]he consumer must be under a duty to notify the manufacturer in a reasonable and timely manner of the need for such action.  Otherwise, the argument goes, the manufacturer would have to become 'clairvoyant' with respect to acknowledging and responding to otherwise unknown claims by consumers.  However, as previously discussed, the Act does not require consumers to take any affirmative steps to secure relief for the failure of a manufacturer to service or repair a vehicle to conform to applicable warranties other than, of course, permitting the manufacturer a reasonable opportunity to repair the vehicle. . .. In reality, as indicated by the facts alleged at trial by the Krotins, the manufacturer seldom on its own initiative offers the consumer the options available under the Act: a replacement vehicle or restitution.  Therefore, as a practical matter, the consumer will likely request replacement or restitution.  But the consumer's request is not mandated by any provision of the Act.  Rather, the consumer's request for replacement or restitution is often prompted by the manufacturer's unfrightright approach and stonewalling of fundamental warranty problems.

(*Krotin*, 38 Cal.App.4th at pp. 302-303, emphasis added.)

The *Krotin* court recognized that manufacturers have access to the information needed to determine whether vehicles are lemons without a consumer's specific request for relief.

> An automobile manufacturer need not read minds to determine which vehicles are defective; it need only read its dealers' service records. The Act requires the manufacturer to maintain or to designate and authorize service and repair facilities in the state (Civ. Code, § 1793.2, subd. (a)(l)(A)); i.e., usually, automobile dealerships with service departments. As indicated by the facts in the present case, where a district service

- 13 -

manager from Porsche ultimately obtained copies of service records from various dealerships to prepare, as she termed it, "a lemon law summary analysis," <u>a manufacturer is capable of becoming aware of every failed repair attempt</u>. Computerized recordkeeping at dealership service departments could easily facilitate this task, even without any direct contact from the consumer to the manufacturer or any request for replacement or reimbursement to the dealership. It is thus apparent that a manufacturer need not be "clairvoyant"; it need only demonstrate more initiative in honoring warranties.

(*Id.* at p. 303, emphasis added.)  The *Krotin* court concluded:

> <u>The manufacturer has an affirmative duty to replace a vehicle or make restitution to the buyer if the manufacturer is unable to repair the new vehicle after a reasonable number of repair attempts, and the buyer need not reject or revoke acceptance of the vehicle at any time</u>.  The buyer need only provide the manufacturer with a reasonable opportunity to fix the vehicle. Accordingly, the jury instruction [the lessee] complained of which required the lessee in the present case to reject or revoke acceptance within a reasonable time was error.

(*Id.* at p. 303, emphasis added.) *Krotin* was later quoted with approval by the Court of Appeal in *Lukather v. General Motors, LLC*, 181 Cal.App.4th 1041, 1050-1052 (2010) (willfulness established because GM knew or should have known from dealer information that vehicle was a lemon, yet did not act in good faith to provide remedy for months). These cases plainly hold, without contradiction, that the Act places no requirement upon a consumer to request that a manufacturer repurchase or replace a defective vehicle, but rather that the manufacturer has an affirmative duty to offer the same when it becomes apparent that nonconformities have not been repaired within a reasonable number of attempts.

Accordingly, Plaintiff will request a special jury instruction telling the jury that Plaintiff never had a duty to request repurchase or replacement. This is done to

- 14 -

tell the jury that BMW NA's duty to "promptly repurchase or replace the vehicle" (CACI No. 3201) is not tied to whether the Plaintiff ever contacts BMW NA directly to request such relief. This element is directly relevant to Plaintiff's claim for restitution under her breach of express warranty claim and her request for civil penalties. In order to recover civil penalties, Plaintiff has to prove that BMW NA knew of its legal obligations and intentionally declined to fulfill them. (CACI No. 3244.) To fully decide this point, the jury should know that BMW NA always has an affirmative duty to promptly repurchase or replace qualifying vehicles, and Plaintiff has no duty to promptly request such relief.

## B. Incidental and Consequential Damages

Plaintiff anticipates the parties will disagree on the categories of damages claimed by Plaintiff as incidental and consequential damages. Plaintiff will request to be reimbursed for maintenance, tires, DMV registration, insurance premiums, and other costs paid for the vehicle. BMW NA will likely object. This court dealt with this same issue when it decided BMW NA's Motion for New Trial in *Ruiz v. BMW of North America, LLC* (2018 WL 2016454), but Plaintiff renews her arguments here.

The statutory scheme governing incidental and consequential damages requires tracking the Act from Civil Code section 1793.2, subd. (d)(2)(B), to Civil Code section 1794, and finally to Commercial Code section 2715.

Consider the following: Under the Act, if a manufacturer is unable to repair its vehicle after a reasonable number of attempts, it shall either replace the vehicle or make restitution to the buyer. (Civ. Code §1793.2, subd. (d)(2).) This restitution includes "the actual price paid or payable by the buyer," including "any collateral charges such as sales or use tax, license fees, registration fees, and other official fees, **plus any incidental damages to which the buyer is entitled under Section 1794**." (Civ. Code §1793.2, subd. (d)(2)(B), emphasis added.)

Further, Civil Code section 1794 incorporates the Commercial Code's definitions of incidental and consequential damages—namely, defining such damages as "expenses reasonably incurred in inspection, receipt, transportation and **care and custody of goods** rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense **incident to the delay or other breach**" as well as "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." (Comm. Code, §§ 2714, 2715, emphasis added; see Directions for Use for CACI 3242 and 3243 (citing Commercial Code section 2715).)

In addition, Commercial Code section 2715 features the word "include" twice. (See § 2715, subds. (1) & (2).) Black's Law Dictionary defines "include" as "to contain as a part of something." (Black's Law Dictionary, 10th ed. 2014.) Accordingly, the list of expenses in Commercial Code section 2715, subd. (1) is not an exhaustive list, but rather is merely part of a list of possible expenses. Moreover, the Restatement of Contracts indicates consequential losses "include such items as injury to person or property resulting from defective performance." Restatement (Second) of Contracts § 347 (Am. Law Inst. 1981)." (*San Diego Gas & Elec. Co. v. ABB, Inc*., No. 15CV605-MMA (KSC), 2016 WL 6680205, at *5 (analyzes subd. 2(b) only.) Consistent with this definition, "section 2715 defines incidental and consequential damages, the latter including '(a)ny loss resulting from… particular requirements… of which the seller at the time of contracting had reason to know...'" (*S.M. Wilson & Co. v. Smith Int'l, Inc*., 587 F.2d 1363, 1373 (9th Cir. 1978) (analyzes subd. 2(a) only.)

In contrast to the broadly-worded provisions describing what a consumer is entitled to recover, subparagraphs (A) through (C) of section 1793.2 strictly limit the allowable deductions to an *offset for use* calculated pursuant to the formula in

- 16 -

subparagraph (C), and **"***nonmanufacturer items* installed by a dealer or the buyer" as provided above. These are the only deductions allowed from the "actual price paid or payable by the buyer."

In sum, statutory restitution is broad, allowing for "any other charges" along with incidental damages under the Commercial Code, whereas deductions are strictly enumerated. The Court must give effect to these Legislative decisions.

Principles of construction, including *ejusdem generis* and *expresio unius est exclusio alterius*, prohibit the Court from reading additional deductions into the statute without controlling authority. "[I]f statutory language is 'clear and unambiguous there is no need for construction and courts should not indulge in it.' Unless defendants can demonstrate that the natural and customary import of the statute's language is either 'repugnant to the general purview of the act,' or for some other compelling reason, should be disregarded, this court must give effect to the statute's 'plain meaning.'" (*Tiernan v. Trustees of Cal. St. Univ.*, 33 Cal.3d 211, 218-219 (1982), citations omitted.)

Judicial interpretation should promote rather than defect the general purpose or policy of statute and should not be construed so as to nullify the will of the legislature or cause the law to come into conflict with the apparent purpose the lawmakers had in view. (*Smith v. Sup. Ct.*, 39 Cal.4th 77 (2006); *California Sch. Employees Assn. v. Jefferson Elementary Sch. Dist.*, 45 Cal.App.3d 683 (1st. Dist. 1975).)

This tracking through the statutes is confirmed by this Court's order in the case of *Ruiz v. BMW of North America, LLC* (2018 WL 2016454), where the Court ultimately determined that incidental and consequential damages *are* statutorily recoverable, and upheld the jury's verdict awarding DMV registrations, insurance premiums, Lyft charges, tire charges, and maintenance charges. The *Ruiz* order, in denying the Defendant's motion for a new trial that included an argument that

incidental and consequential damages awarded in that case were contrary to the law, stated, in relevant part:

> The [Song-Berverly] Act allows for recovery of "charges for transportation...[,]any collateral charges such as sales or use tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer." Cal. Civ. Code § 1793.2(d)(2)(B). Section 1794 incorporates definitions of incidental and consequential damages from California Commercial Code section 2715:
>
> (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.
>
> (2) Consequential damages resulting from the seller's breach include (a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be
>
> prevented by cover or otherwise. Cal. Com. Code § 2715.
>
> The plain language of the statute taken with its remedial purpose supports the Ruizes's interpretation of the incidental and consequential damages that are recoverable. See Murillo, 17 Cal.4th at 990 (holding the Act should be interpreted to support its remedial purpose).

*Ruiz v. BMW of North America, LLC,* 2018 WL 2016454.

BMW NA will likely cite to *Kirzhner v. Mercedes-Benz USA LLC*, 18 Cal.App.5th 453 (2017) as a blanket ruling disallowing awarding the specific incidental and consequential damages Plaintiff seeks in this case. Again, this Court's

order denying BMW's Motion for New Trial dealt with this argument, stating, "*Kirzhner* has no precedential effect during the time it is awaiting review by the California Supreme Court. Cal. R. Ct. 8.1115(e)(1) ("Pending review and filing of the Supreme Court's opinion...a published opinion of a Court of Appeal in the matter has no binding or precedential effect, and may be cited for potentially persuasive value only. Any citation to the Court of Appeal opinion must also note the grant of review and any subsequent action by the Supreme Court.")."

Accordingly, Plaintiff should be able to request maintenance, tires, DMV registration, and insurance premiums for the vehicle as incidental and consequential damages. It will be up to the jury to decide whether, based on the elements of CACI Nos. 3242 and 3243, to award Plaintiff these costs.

## VIII.  BIFURCATION OF ISSUES

Plaintiff does not request any bifurcation of issues.

## IX.  JURY TRIAL

Plaintiff has requested a jury trial.

## X.  ATTORNEYS' FEES

The Act provides that a prevailing plaintiff <u>shall recover attorney's fees and costs</u>.  Civ. Code §1794, subd. (d). Under this section, fees awarded are to be based on "actual time expended." In *Drouin v. Fleetwood Enterprises* (1985) 163 Cal.App.3d 486, 493, the Court described such attorney's fees provisions as follows:

> It should be noted that an attorney's fee is to be based upon actual time expended rather than being tied to a percentage of the recovery.  This requirement is designed to make the pursuit of consumer rights involving inexpensive consumer products economically feasible.

In this case, when Plaintiff prevails on her claim, Plaintiff will petition the Court for an award of reasonable attorney's fees and costs of suit.

## XI.  ABANDONMENT OF ISSUES

Plaintiff do not abandon any additional claims against BMW NA.

Respectfully Submitted,

DATED:      October 9, 2018          **WIRTZ LAW APC**


By:    */s/ Amy R. Smith*
       Richard M. Wirtz
       Amy R. Smith
       Attorneys for Plaintiff

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW