KATE S. LEHRMAN [Bar No. 123050]
klehrman@lehrmanlawgroup.com
DANIEL R. VILLEGAS [Bar No. 159935]
dvillegas@lehrmanlawgroup.com
ANDREW STEFATOS [Bar No. 306697]
astefatos@lehrmanlawgroup.com
LEHRMAN LAW GROUP
12121 Wilshire Boulevard
Suite 1300
Los Angeles, CA 90025
(310) 917-4500
(310) 917-5677 (FAX)

Attorneys for Defendants
BMW OF NORTH AMERICA, LLC and
MCKENNA MOTOR COMPANY, INC.,
d/b/a MCKENNA BMW

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LORENA GODINEZ,

Plaintiff,

v.

BMW OF NORTH AMERICA, LLC, a Delaware Limited Liability Company, MCKENNA MOTOR COMPANY, INC., d/b/a MCKENNA BMW, and DOES 1 through 10, inclusive,

Defendants.

Case No. 2:17-cv-05072-FLA-RAO
[Filed: April 18, 2017]
[Removed: July 10, 2017]

Hon. Fernando L. Aenlle-Rocha
Courtroom 6B

**DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

DISCOVERY CUT-OFF: 05/02/18
MOTION CUT-OFF: 09/17/18
TRIAL DATE: 08/10/21

//

TO THE HONORABLE COURT:

PLEASE TAKE NOTICE THAT Defendant BMW of North America, LLC ("BMW NA") hereby submits its Memorandum of Contentions of Fact and Law pursuant to Local Rule 16-4.

## I. SUMMARY STATEMENT

This is a "lemon law" action arising under the California Song-Beverly Consumer Warranty Act.

This automotive breach of warranty action involves a 2010 BMW 328is (VIN WBAPH5G54ANM34946) ("Subject Vehicle") which Plaintiff Lorena Godinez ("Plaintiff") purchased from McKenna BMW on December 31, 2009. The Subject Vehicle was accompanied by a 4 year/50,000 limited warranty from defendant BMW of North America, LLC ("BMW NA"), the distributor.

On April 18, 2017, Plaintiff filed this action against BMW NA alleging violations of the Song Beverly Consumer Warranty Act. This case was then removed to federal court. BMW NA denies Plaintiff's allegations. Never did BMW NA breach the express warranty. Every request for diagnosis and repair under warranty was handled promptly and professionally by BMW service centers.

BMW's service centers were adequately equipped with the repair materials they needed in order to diagnosis and repair the subject vehicle. They had direct access to repair materials that helped them work on the Subject Vehicle. No alleged nonconformity was presented an unreasonable number of repair attempts, and no alleged nonconformity ever substantially impaired use, value or safety. Some of Plaintiff's concerns were not defects, and, since Plaintiff never revoked acceptance timely, the remedy of breach of implied warranty is diminution in value, at best. BMW NA further contends that no warranty concern has been presented for repair an unreasonable number of repair attempts, Plaintiff misused or abused the vehicle and that any concerns that Plaintiff may have had were caused by unreasonable or unreasonable use.

## II. REQUIRED ELEMENTS TO PROVE PLAINTIFF'S CLAIMS

### A. SONG-BEVERLY CONSUMER WARRANTY ACT - BREACH OF EXPRESS WARRANTY (CACI 3201)

1. Plaintiff purchased a vehicle (*i.e* the Subject Vehicle) distributed by BMW NA for personal, family or household purposes.

2. BMW NA gave Plaintiff a written warranty with the Subject-Vehicle;

3. The Subject-Vehicle had a nonconformity covered by the written warranty that substantially impaired its use, value, or safety to a reasonable person in Plaintiff's situation.

4. Plaintiff delivered the vehicle to BMW NA or its authorized repair facilities for repair of the substantially impairing nonconformity.

5. BMW NA failed to repair the alleged nonconformity after a reasonable number of opportunities to do so.

6. BMW NA did not repurchase or replace the Subject Vehicle.

Further, in order to recover a civil penalty, Plaintiff must prove that Defendant's failure was willful (CACI 3244).

### B. SONG-BEVERLY CONSUMER WARRANTY ACT - BREACH OF IMPLIED WARRANTY

1. Plaintiff purchased a vehicle (*i.e* the Subject Vehicle) from BMW NA for personal, family or household purposes.

2. The Subject Vehicle had a defect, at time of lease, which rendered it unfit for its ordinary purpose of providing transportation.

3. The defect manifested in the first year of ownership.

4. The defect was not caused by unreasonable or unauthorized use;

5. Plaintiff revoked acceptance of the Subject Vehicle within a reasonable time after discovering the defect.

6. If there was no timely revocation of acceptance, Plaintiff sustained damages caused by the breach of the implied warranty of merchantability.

## III. SUMMARY OF KEY EVIDENCE IN OPPOSITION

### A. IMPLIED WARRANTY

If Plaintiff proved a breach of the implied warranty, her remedy is limited to diminution in value. This is because Civil Code Section 1791.1(d) provides: "Any buyer of consumer goods injured by a breach of the implied warranty of merchantability ... has the remedies provided in Chapter 6 (commencing with 2601) and Chapter 7 (commencing with Section 2701) of Division 2 of the Commercial Code, and, in any action brought under such provisions, Section 1794 of this chapter shall apply." Civil Code section 1794(b)(1) continues: "Where the buyer has rightfully rejected or justifiably revoked acceptance of the goods or has exercised any right to cancel the sale, Sections 2711, 2712, and 2713 of the Commercial Code shall apply."

Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller. Cal. U. Com. Code, § 2602, subd. (1).) Once goods have been accepted, the buyer may revoke his or her acceptance if the vehicle has a nonconformity that substantially impairs its value to him. (Cal U. Corn. Code § 2608, subd. (1).) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it. Cal. U. Com. Code, § 2608, subd. (2).)

In this case, because there was no timely revocation of acceptance, Plaintiff's remedy for breach of implied warranty, assuming she is successful on this claim, should be limited to "the measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have been if they had been as warranted, unless special circumstances show proximate damages of a different amount." Commercial Code Section 2714(2). This result is supported by the California

Supreme Court's decision in Gavaldon v. DaimlerChrysler Corp., 32 Cal.App.4th 1246 (2004), as modified (June 23, 2004). Interpreting the legislative history of Song Beverly, the Court explained that the inclusion of restitution in Section 1794(b) was to clarify that such a remedy was available for a manufacturer's failure to repair a substantially impairing nonconformity after a reasonable number of repair attempts under Civil Code Section 1793.2(d)(2). Id. at pp. 761-762. Implicit in the Court's ruling is that rescission for breach of implied warranty is only available if there has been timely revocation.

Civil Code section 1794, subdivision (b)(2) provides that "[w]here the buyer has accepted the goods, Sections 2714 and 2715 of the Commercial Code shall apply, and the measure of damages shall include the cost of repairs necessary to make the goods conform." Commercial Code section 2714, subdivision (2) provides as follows: "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." Although DaimlerChrysler's service contract limited remedies to the cost of repairs or replacement if less than the cost of repairs, Commercial Code section 2719, subdivision (2) provides that alternative remedies may be sought if the remedy provided by contract "fail[s] of its essential purpose."

**B. EXPRESS WARRANTY**

CACI 3201 sets forth the elements of a claim for breach of express warranty under Song-Beverly under the circumstances of this case, where the consumer good was a new motor vehicle. These elements are:

(1) The plaintiff was a purchaser of a new motor vehicle;

(2) Defendant gave a written warranty concerning the vehicle;

(3) The vehicle contained a nonconformity or nonconformities covered by the warranty that substantially impaired the use, value or safety of the vehicle to a reasonable person in the position of the plaintiff;

(4) The plaintiff delivered the vehicle to the defendant or its authorized repair facilities for repair;

(5) The defendant was unable to repair the nonconformity after a reasonable number of attempts; and

(6) The defendant did not replace or repurchase the vehicle.

A manufacturer, distributor, or retailer is not liable if it successfully services or repairs a vehicle under the warranties provided. A manufacturer may only be held liable if it fails to service or repair the vehicle to conform to its express warranty after a reasonable number of attempts to repair the claimed "nonconformity." (Civ. Code, § 1793.2, subd. (d)(1).) A consumer is only entitled to repurchase or replacement if the same nonconformity is repeatedly subject to repair. (See Civ. Code, §§ 1793.2, subd. (d)(2) and 1793.22, subd. (b).) The relevant inquiry is whether "a reasonable number of repair attempts have been made" to repair the "same nonconformity." (See Civ. Code, § 1793.22, subd. (b).) In other words, the law does not require a manufacturer to produce a perfect vehicle; it only requires a manufacturer to repair any problems that arise that are covered by warranty.

Not every minor "defect" is an actionable "nonconformity." "Nonconformity" means a nonconformity that substantially impairs the use, value or safety of the motor vehicle to the buyer." (Civ. Code, § 1793.22, subd. (e)(1).) Only a problem that has not been remedied after a reasonable number of repair attempts which "substantially impairs the use, value or safety" of the vehicle gives rise to liability. (Civ. Code, § 1793.22, subd. (e)(1).) Additionally, a Plaintiff cannot recover under the Song Beverly act if the “defect” or “nonconformity” is the result of Plaintiff’s misuse of the Subject Vehicle. Here, there is suspicion of tampering with the Subject Vehicle.

A complaint is not a defect. A technical service bulletin is not an admission of a defect, because technical service bulletins are routinely issued to dealers to help diagnose and repair typical complaints. <u>American Honda Motor Co.</u>, 199

Cal.App.4th at 1378.) As our Supreme Court has pointed out: "Even a vehicle with a defect is not necessarily a lemon. A 'nonconformity' requiring the vehicle's refund or replacement under our law must "substantially impair[] the use, value, or safety of the new motor vehicle." (Civ. Code, § 1793.22, subd. (e)(l).) “Not every customer complaint about a new car, or even every valid customer complaint, rises to that level. And customers and manufacturers frequently disagree about whether a defect has been repaired or a reasonable number of attempts have been made." Johnson v. Ford Motor Co., 35 Cal.4th 1191, 1211 (2005).

Finally, the existence of defect is not a breach of warranty. Where, as here, a warranty provides for the limited remedy of repair or replacement of defective parts, a buyer may only sue for damages if the limited remedy "fail [s] of its essential purpose." (See Cal. U. Corn. Code, §§ 2719, subds. (1)(a) and (2); Gavaldon, 32 Cal.4th at 1264-65.) A repair warranty fails of its essential purpose when the warrantor repeatedly fails to correct the defect as promised. See Seely v. White Motor Co., 63 Cal.2d 9, 14 (1965).

Civil Code section 1793.22, subdivision (b) sets forth the standards for determining whether the manufacturer has had a reasonable opportunity to make repairs, whether the vehicle is out of service for more than 30 calendar days or the same "nonconformity" has been the subject of at least four repair attempts by the manufacturer or its agent. Civ. Code, § 1793.22; Krieger v. Nick Alexander Imports, Inc., 234 Cal.App.3d 205, 210 (Ct. App. 1991). These provisions are "designed to give recourse to the buyer of a new automobile that suffers from the same defect repeatedly or is out of service for cumulative repairs for an extended period." Id.)

In this case, Plaintiff cannot establish a breach of express warranty under Song-Beverly. BMW NA contends there were no defects covered by the warranty that could not be repaired and that substantially impaired the use, value or safety of the vehicle.

**C. THE AGGREGATE TEST DOES NOT APPLY**

Plaintiff may argue that she only had to present the vehicle twice for repair. She would be wrong. In Robertson v. Fleetwood Travel Trailers of California, Inc., 144 Cal.App.4th 785, 798-799 (2006), the court stated, citing Oregel v. American Isuzu Motors, Inc., 90 Cal.App.4th 1094, 1103 (2001):

> A plaintiff pursuing an action under the Song-Beverly Act has the burden to prove the following elements: (1) the product had a defect or nonconformity covered by the express warranty; (2) the product was presented to an authorized representative of the manufacturer for repair; and (3) the manufacturer or its representative did not repair the defect or nonconformity after a reasonable number of repair attempts ....

As shown above, Plaintiff must show that "the manufacturer or its representative did not repair the defect or nonconformity after a reasonable-number of repair attempts." This language strongly suggests that if there is more than one defect or nonconformity, the manufacturer or its representative must fail to repair each defect or nonconformity after a reasonable number of repair attempts. A review of jury instructions supports this interpretation. California Civil Jury Instruction 3201 outlines the elements as follows:

1. That [name of plaintiff] [bought/leased] [a/an] [new motor vehicle] [from/distributed by/manufactured by] [name of defendant];
2. That [name of defendant] gave [name of plaint(f/] a written warranty that [describe alleged express warranty]:
3. That the vehicle had [a] defect[s] that [was/were] covered by the warranty and that substantially impaired its use, value, or safety to a reasonable person in [name of plaintiff]'s situation;
4. [That [name of plaintiff] delivered the vehicle to name of defendant] or its authorized repair facility ***for repair of the defect[s]***;] [or] [That [name of plaintiff] notified [name of defendant] in writing of the need for repair of the defect[s] because [he/she] reasonably could not deliver the vehicle to [name of defendant] or its authorized repair facility because of the nature of the defect[s];]

5. That [name of defendant] or its authorized repair facility failed to repair the vehicle to match the written warranty after a reasonable number of opportunities to do so; and
6. That [name of defendant] did not promptly replace or buy back the vehicle.

(Emphasis added.)

In Mega RV Corp. v. HWH Corp., 225 Cal.App.4th 1318, 1333 (2014), the court stated that "[t]he Act 'was enacted to address difficulties faced by consumers in enforcing express warranties. Consumers frequently were frustrated by the inconvenience of having to return goods to the manufacturer for repairs and by repeated unsuccessful attempts to remedy the **problem** . ... ' ... " (Emphasis Added.) This language further indicates that the Act was enacted because of repeated attempts to remedy-a-repeating problem.

In Duale v. Mercedes-Benz USA, LLC,148 Cal.App.4th 718, 721 fn. 1 (2007), citing Murillo v. Fleetwood Enterprises. Inc., 17 Cal.4th 985, 989-990 (1998), the court wrote:

> The Song-Beverly Act" 'regulates warranty terms, imposes service and repair obligations on manufacturers, distributors, and retailers who make express warranties, requires disclose of specified information in express warranties, and broadens a buyer's remedies to include costs, attorney's fees, and civil penalties'" and" 'gives recourse to the buyer of a new automobile that suffers from the same defect repeatedly, or is out of service for cumulative repairs for an extended period.'"
>
> (Internal citations and brackets omitted.)

Set forth in Section 1793.22, the Tanner Consumer Protection Act, are certain presumptions that may be relied upon by the buyer in connection with an express warranty claim. Subdivision (b) states:

> It shall be presumed that a reasonable number of attempts have been made to conform a new motor vehicle to the applicable express warranties if, within 18 months from delivery to the buyer or 18,000 miles on the odometer of the vehicle, whichever occurs first, one or more of the following occurs:

> (1) The same nonconformity results in a condition that is likely to cause death or serious bodily injury if the vehicle is driven and the nonconformity has been subject to repair two or more times by the manufacturer or its agents, and the buyer or lessee has at least once directly notified the manufacturer of the need for the repair of the nonconformity.
>
> (2) The same nonconformity has been subject to repair four or more times by the manufacturer or its agents and the buyer has at least once directly notified the manufacturer of the need for the repair of the nonconformity.
>
> (3) The vehicle is out of service by reason of repair of nonconformities by the manufacturer or its agents for a cumulative total of more than 30 calendar days since delivery of the vehicle to the buyer. ...

While Plaintiff might cite Section 1793.22 to support her position that the repairs under Section 1793.2 do not need to be to the same defect, the provision in Section 1793.22 were previously contained in Section 1793.2. At the time of the decision in Krieger v. Nick Alexander Imports, Inc., 234 Cal.App.3d 205, section 1793.2, subdivision (e)(1) provided in pertinent part:

> ... "It shall be presumed that a reasonable number of attempts have been made to conform a new motor vehicle to the applicable express warranties if, within one year from delivery to the buyer or 12,000 miles on the odometer of the vehicle, whichever occurs first, either (A) the same nonconformity has been subject to repair four or more times by the manufacturer or its agents and the buyer has at least once directly notified the manufacturer of the need for the repair of the nonconformity, or (B) the vehicle is out of service by reason of repair of nonconformities by the manufacturer or its agents for a cumulative total of more than 30 calendar days since delivery of the vehicle to the buyer. ...

Id. at 213, fn. 4.

While these provisions "simply embody the Legislature's decision to declare presumptive standards of what is 'reasonable' for purposes of subdivision (d)." See Ibrahim v. Ford Motor Co., 214 Cal.App.3d 878, 885-886 (Ct. App. 1989), they

show that the Act was intended to address situations of repeat repairs of the same defect and extended periods of the vehicle being out of service for repairs of any defects.

**D. <u>THERE ARE NO GROUNDS FOR A CIVIL PENALTY</u>**

In order to obtain a penalty for breach of express warranty, Plaintiff must show that BMW NA improperly denied restitution or "willfully" violated its obligations under Song-Beverly. Civ. Code, § 1794, subd. (c) e)(2). A failure to refund or replace was not willful if the manufacturer reasonably and in good faith believed the facts did not call for refund or replacement. "This might be the case, for example, if the manufacturer reasonably believed the product did conform to the warranty, or a reasonable number of repair attempts had not been made, or the buyer desired further repair rather than replacement or refund." <u>Kwan v. Mercedes-Benz of North America, Inc.</u>, 23 Cal.App.4th 173, 185 (1994).

In this case, the evidence will show BMW NA evaluated the repair history in good faith and made the determination that the Subject Vehicle did not qualify. Further, no verified warranty concern was ever presented for an unreasonable number of repair attempts.

In addition, a civil penalty may be awarded where the warrantor's arbitration program is not state certified. (Cal. Civ. Code § 1794(e).) Such is not the case here. BMW NA's Better Business Bureau Auto Line arbitration program is certified by the State Department of Consumer Affairs, Arbitration Certification Program.

Moreover, under section 1794(e)(3) of the statute, BMW NA is not liable for civil penalty because Plaintiff failed to provide written notice to BMW NA of her request. (Cal. Civ. Code § 1794(e)(3).).

**E. <u>NO PREJUDGMENT INTEREST</u>**

Plaintiff is not entitled to pre-judgment interest even if he prevails. <u>Duale v. Mercedes-Benz USA, LLC,</u> 148 Cal.App.4th 718 (2007) (not an abuse of

discretion to refuse prejudgment interest in Song Beverly action where "'the amount of damages was not certain, nor could it be made certain, until the jury determined whether the[re] was a nonconformity, whether it impaired the use, value or safety of the vehicle, and the mileage at which the nonconformity was presented for repair.")

## IV. SUMMARY STATEMENT OF AFFIRMATIVE DEFENSES

BMW NA plans to pursue the following affirmative defenses:

Affirmative Defense 1: Failure to State a Cause of Action.

Affirmative Defense 2: Duration of Implied Warranty – New Vehicle.

Affirmative Defense 3: Subject Vehicle Fit for Its Intended Purpose.

Affirmative Defense 4: No Timely Revocation of Acceptance.

Affirmative Defense 5: Unreasonable or Unauthorized Use.

Affirmative Defense 6: Misuse, Abuse, Improper Maintenance or Other Exclusion.

Affirmative Defense 9: Good Faith Evaluation.

Affirmative Defense 11: Third Party Resolution.

## V. REQUIRED ELEMENTS FOR AFFIRMATIVE DEFENSES

### A. ELEMENTS REQUIRED TO ESTABLISH DEFENDANT'S AFFIRMATIVE DEFENSE NO. 1 OF PLAINTIFFS' FAILURE TO STATE A CAUSE OF ACTION.

BMW NA asserts this defense based on the absence of evidence.

BMW NA's assertion is based on Plaintiff’s failure to establish an essential element of her claims against BMW NA.

### B. ELEMENTS REQUIRED TO ESTABLISH DEFENDANT'S AFFIRMATIVE DEFENSE NO. 2 OF DURATION OF IMPLIED WARRANTY.

The duration of the implied warranty for new goods is one year, and is only intended to cover those defects that manifest or surface during that one year time

frame. Cal. Civ. Code § 1791.1(c).

**C. ELEMENTS REQUIRED TO ESTABLISH DEFENDANT'S AFFIRMATIVE DEFENSE NO. 3 OF SUBJECT VEHICLE FIT FOR ITS INTENDED PURPOSE.**

BMW NA alleges that the Subject Vehicle was fit for its ordinary purpose of providing transportation at all times. American Suzuki Motor Corp. v. Superior Court, 37 Cal.App.4th 129 (1995).

**D. ELEMENTS REQUIRED TO ESTABLISH DEFENDANT'S AFFIRMATIVE DEFENSE NO. 4 OF NO TIMELY REVOCATION OF ACCEPTANCE.**

BMW NA alleges that Plaintiff did not revoke acceptance within a reasonable time and/or before a substantial change in the Subject Vehicle's condition, therefore barring restitution as a remedy for Plaintiff's breach of implied warranty claim.

**E. ELEMENTS REQUIRED TO ESTABLISH DEFENDANT'S AFFIRMATIVE DEFENSE NO. 5 UNREASONABLE OR UNAUTHORIIZED USE.**

BMW NA alleges that Plaintiff did not use the subject vehicle in a reasonable or authorized way. Plaintiff admitted that she was involved in an accident. When a nonconformity is caused by the unauthorized or unreasonable use or improper maintenance, the Song-Beverly Act does not apply. Jones v. Credit Auto Ctr., Inc., 237 Cal. App. 4th Supp. 1, 10 (Cal. App. Dep't Super. Ct. 2015); Cal. Civ. Code § 1794.3. There is suspicion of tampering.

**F. ELEMENTS REQUIRED TO ESTABLISH DEFENDANT'S AFFIRMATIVE DEFENSE NO. 6 NEGLIGENCE, IMPROPER MAINTENANCE OR OTHER EXCLUSION**

BMW NA alleges that Plaintiffs failed to properly maintain the subject vehicle. Nonconformities caused by improper maintenance are excluded from

recovering under the Song Beverly Act. Jones v. Credit Auto Ctr., Inc., 237 Cal. App. 4th Supp. 1, 10 (Cal. App. Dep't Super. Ct. 2015); Cal. Civ. Code § 1794.3.

### G. ELEMENTS REQUIRED TO ESTABLISH DEFENDANT'S AFFIRMATIVE DEFENSE NO. 9 GOOD FAITH EVALUATION

Plaintiff requested that BMW NA repurchase the Subject Vehicle on November 7, 2016. BMW NA promptly evaluated the service file and the service history and denied Plaintiff's claims in good faith.

### H. ELEMENTS REQUIRED TO ESTABLISH DEFENDANT'S AFFIRMATIVE DEFENSE NO. 11 THIRD PARTY RESOLUTION.

BMW NA maintains a qualified third-party dispute resolution process. Consequently, Plaintiff has no claim for civil penalty for any alleged willful violation. Suman v. BMW of North America, Inc. 23 Cal. App. 4th 1 (1994).

## VI. KEY EVIDENCE IN SUPPORT OF AFFIRMATIVE DEFENSES

**Affirmative Defense 1: Plaintiffs' Failure to State a Cause of Action**

1. December 31, 2009 sales contract
2. BMW NA's New Vehicle Limited Warranty
3. Testimony of Lorena Godinez
4. Testimony of Jose Conde
5. Testimony of Richard Muller
6. Testimony of Leland Roy Nez
7. Testimony of Ruben Marquez
8. Testimony of Eddie Wong
9. Testimony of Luis Holguin, Expert Report and Exhibits
10. New Century BMW's Service File
11. McKenna BMW's Service File
12. Subject Vehicle's Warranty Vehicle Inquiry

13. California's BBB Lemon Law Summary
14. Service Request Details
15. Warranty Booklet for the Subject Vehicle

BMW NA further asserts this defense is based on the absence of evidence.

**Affirmative Defense 2: Duration of Implied Warranty**

1. December 31, 2009 sales contract
2. BMW NA's New Vehicle Limited Warranty
3. Testimony of Lorena Godinez

**Affirmative Defense 3: Subject Vehicle Fit for Its Intended Purpose**

1. December 31, 2009 sales contract
2. BMW NA's New Vehicle Limited Warranty
3. Testimony of Lorena Godinez
4. Testimony of Luis Holguin, Expert Report and Exhibits
5. Testimony of Richard Muller
6. Testimony of Leland Roy Nez
7. Testimony of Ruben Marquez
8. Testimony of Eddie Wong
9. New Century BMW's Service File
10. McKenna BMW's Service File
11. Subject Vehicle's Warranty Vehicle Inquiry

BMW NA further asserts this defense is based on the absence of evidence.

**Affirmative Defense 4: No Timely Revocation of Acceptance**

1. December 31, 2009 sales contract
2. BMW NA's New Vehicle Limited Warranty
3. Testimony of Lorena Godinez
4. Service Request Details

BMW NA further asserts this defense is based on the absence of evidence of timely revocation.

**Affirmative Defense 5: Unreasonable or Unauthorized Use**

1. Testimony of Lorena Godinez
2. Testimony of Richard Muller
3. Testimony of Leland Roy Nez
4. Testimony of Ruben Marquez
5. Testimony of Eddie Wong
6. Testimony of Luis Holguin, Expert Report and Exhibits
7. New Century BMW's Service File
8. McKenna BMW's Service File
9. Subject Vehicle's Warranty Vehicle Inquiry
10. Carfax report

**Affirmative Defense 6: Negligence, Improper Maintenance or Other Exclusion**

Testimony of Lorena Godinez

2. Testimony of Richard Muller
3. Testimony of Leland Roy Nez
4. Testimony of Ruben Marquez
5. Testimony of Eddie Wong
6. Testimony of Luis Holguin, Expert Report and Exhibits
7. New Century BMW's Service File
8. McKenna BMW's Service File
9. Subject Vehicle's Warranty Vehicle Inquiry
10. Carfax report

**Affirmative Defense 9: Good Faith Evaluation**

1. December 31, 2009 sales contract
2. BMW NA's New Vehicle Limited Warranty
3. Testimony of Lorena Godinez
4. Testimony of Jose Conde

5. Testimony of Richard Muller
6. Testimony of Leland Roy Nez
7. Testimony of Ruben Marquez
8. Testimony of Eddie Wong
9. Testimony of Luis Holguin, Expert Report and Exhibits
10. New Century BMW's Service File
11. McKenna BMW's Service File
12. Subject Vehicle's Warranty Vehicle Inquiry
13. California's BBB Lemon Law Summary
16. Service Request Details
17. Warranty Booklet for the Subject Vehicle

**Affirmative Defense 11: Third Party Resolution**

1. December 31, 2009 sales contract
2. BMW NA's New Vehicle Limited Warranty
3. Testimony of Lorena Godinez
4. Testimony of Jose Conde
5. California's BBB Lemon Law Summary
6. Service Request Details
7. Warranty Booklet for the Subject Vehicle

## VII. (NOT APPLICABLE – NO THIRD PARTIES)

Not applicable.

## VIII. ANTICIPATED EVIDENTIARY ISSUES

Emotional distress damages are not recoverable under the Song-Beverly Act. Kwan v. Mercedes-Benz of North America, Inc., 23 Cal.App.4th 174, 187 (1994) (emotional distress damages for repeated efforts to get his car repaired, and the operational problems he considered unsafe, made him 'frustrat[ed] and mad,' 'sad,' 'nervous,' and 'worr[ied] about the safety for the family' were not authorized.) See

also, Bishop v. Hyundai Motor America, 44 Cal.App.4th 750, 758 (1996) and Gu v. BMW of North America, LLC, 132 Cal.App.4th 195, 206-207 (2005).

BMW NA filed the following Motions *in Limine*

1. Motion *in Limine* to Exclude Tom Lepper (Daubert reliability, methodology, helpfulness)
2. Motion *in Limine* to Exclude evidence on fewer than 2 repairs (does not meet Song-Beverly standard)
3. Motion *in Limine* to Exclude improper legal opinions (by lay and expert witnesses)
4. Motion *in Limine* to Exclude non-warranty and third party repairs
5. Motion in *Limine* to Exclude evidence of other vehicles, claims and/or incidents

BMW NA's Motions in Limine Nos. 2 and 3 were granted.

## IX. IDENTIFICATION OF ANY ISSUES OF LAW

BMW NA references Section III on Key Evidence and its Motions *in Limine*.

DATED: July 2, 2021

LEHRMAN LAW GROUP
KATE S. LEHRMAN
DANIEL R. VILLEGAS
ANDREW K. STEFATOS

BY: /s/ Andrew K. Stefatos
Andrew K. Stefatos
Attorneys for Defendants
BMW OF NORTH AMERICA, LLC and
MCKENNA MOTOR COMPANY, INC.,
d/b/a MCKENNA BMW